**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

William J. Carey


        v.                                    Civil No. 05-cv-293-JD


Manchester Police Department, et al.

**<u>REPORT AND RECOMMENDATION</u>**

*Pro se* plaintiff William J. Carey has filed a complaint pursuant to 42 U.S.C. § 1983, alleging claims for malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution and claims of defamation, tortious interference with contractual relations and intentional interference with prospective contractual relations under New Hampshire law.  Seeking monetary relief, he brings this action against the Manchester Police Department ("MPD") and MPD employees Detectives Steven Olson and Peter Bartlett and Officer Michael Boufford.

The complaint is before me for preliminary review to determine whether, among other things, it states a claim upon which relief may be granted.  <u>See</u> 28 U.S.C. § 1915A; U.S. District Court for the District of New Hampshire Local Rule

("LR") 4.3(d)(2).  For the reasons stated below, I find that
Carey has alleged Fourth Amendment malicious prosecution claims
against Olson and Boufford.  I recommend dismissal of all
remaining claims.

### Standard of Review

In reviewing a *pro se* complaint, this court must construe
the pleading liberally and in favor of the *pro se* litigant.  See
Ayala Serrano v. Gonzalez, 909 F.2d 8, 15 (1st Cir. 1990)
(following Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  At this
preliminary stage of review, all factual assertions made by the
plaintiff and inferences reasonably drawn therefrom must be
accepted as true.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st
Cir. 1996)(stating the "failure to state a claim" standard of
review and explaining that all "well-pleaded factual averments,"
not bald assertions, must be accepted as true).  This review
ensures that *pro se* pleadings are given fair and meaningful
consideration.  See Eveland v. Director of CIA, 843 F.2d 46, 49
(1st Cir. 1988).  I apply this standard in reviewing Carey's
complaint.

### Background

Crediting the factual allegations in the complaint in the

2

light most favorable to Carey, the material facts are as follows.
Carey is currently a pretrial detainee at the Hillsborough County
House of Corrections.  This action stems from state court
criminal proceedings initiated against him in 2002 when he was
charged with stalking Kristie Eglody, a former New Hampshire
resident who currently resides in North Carolina.  While the
state court procedural history is unclear, it appears that Carey
was criminally prosecuted for stalking Eglody or violating a
protective order and was acquitted twice and convicted once.  He
has provided this Court with only one return issued by the New
Hampshire Superior Court (Hillsborough County), reflecting that
on October 16, 2003 he was found "not guilty" of an "attempted
violation stalking order RSA: 629:1 and 633:3-a I(c)."[1]

<u>Claims Against Olson</u>

Construed liberally, Count One of the complaint alleges that

---

[1]N.H. Rev. Stat. Ann. § 633:3-a I(c) provides:

After being served with, or otherwise provided notice
of, a protective order pursuant to RSA 173-B, RSA
458:16, or paragraph III-a of this section, or an order
pursuant to RSA 597:2 that prohibits contact with a
specific individual, purposely, knowingly, or
recklessly engages in a single act of conduct that both
violates the provisions of the order and is listed in
paragraph II(a).

from 2003 to the present, Olson maliciously prosecuted Carey.  In
March 2003, he allegedly coerced Carey into giving false
statements outside the presence of an attorney and subsequently
used those statements to prosecute him.  According to Carey,
Olson repeatedly brought charges against him on behalf of Eglody
and caused him to be incarcerated for nearly two and one half
years as a pretrial detainee.  Carey allegedly was found "not
guilty" of the charges.

Claims Against Bartlett

Construed liberally, Count Two of the complaint alleges that
from 2002 to 2004, Bartlett maliciously prosecuted Carey and
interfered with his employment.  In 2002, Bartlett and Boufford
charged Carey with stalking Eglody and arrested him for sending
two bottles of perfume on two separate occasions to her North
Carolina address.  Bartlett allegedly arranged for Eglody's
roundtrip airfare from North Carolina to New Hampshire on two
occasions so that she could obtain a restraining order against
Carey, testify against him and facilitate his conviction in New
Hampshire state court.

Carey further alleges that in February 2002, Bartlett and
Boufford surrounded his place of employment at Energy To Go and
arrested him, thereby causing him to lose his position as

4

assistant manager.  In February 2002, Carey interviewed for a
position at the Easter Seal Jolicoeur Center in Manchester, New
Hampshire and was expecting to receive an offer of employment.
When he subsequently arrived at his residence, he was confronted
by uniformed MPD officers, MPD detectives and domestic violence
advocates.  At that time, Bartlett discovered that Carey had
returned from an interview at the Jolicoeur Center and allegedly
used that information to interfere with his prospective
employment.  While confronting Carey at his residence, Bartlett
allegedly accused him of stalking Eglody in North Carolina and
threatened him with arrest.  Subsequently, Carey agreed to
warrantless search of his apartment and claims that he was
encouraged to walk down to the MPD but was not placed under
arrest so that his interrogation appeared to be voluntary.  While
at the MPD, he was encouraged to give a statement outside the
presence of an attorney.  Bartlett allegedly fabricated
statements and admissions against Carey, without tape-recording
the interrogation, and used the statements against him at trial.
Carey allegedly was convicted of the above charges.

<u>Claims Against Boufford</u>

Construed liberally, Count Three of the complaint alleges
that from 2002 to 2004, Boufford maliciously prosecuted Carey and

interfered with his employment.  In January 2002, Boufford allegedly received a letter from Eglody in which she claimed to "know nothing about" Carey and asked Boufford to harass Carey at his place of employment.  When Eglody subsequently admitted to being acquainted with Carey, Boufford allegedly disregarded her admission.

Carey further alleges that Boufford interfered with his employment.  As stated previously, in February 2002, Boufford and Bartlett arrested Carey at his place of employment at Energy To Go and caused him to lose his position as assistant manager. Carey also alleges that while out on bail, he was hired as a temporary employee by Unicast and within a few weeks was given an application for permanent employment.  Soon afterwards, a uniformed MPD police officer appeared at Unicast and served him with a stalking petition.  As a result, Carey lost his prospective employment opportunity with Unicast.  Without providing any supporting facts, he further claims that he lost a part-time position teaching oil painting at Timberline High School.  The record fails to allege any involvement by Boufford with regard to the incidents at Unicast and Timberline.  Lastly, Carey alleges that Boufford testified at his state court trial in June 2002 and submitted fabricated statements against him that

6

were premised upon an incident that occurred more than 10 years prior to trial.  Carey allegedly was acquitted of all charges.

<u>Claims Against the MPD</u>

In Count One of the complaint and supporting documents, Carey alleges that the MPD made slanderous and libelous statements against him to his landlord, employer, University of New Hampshire, Manchester Union Leader, Nashua Telegraph and Concord Monitor.  The sole basis of his claim is that the newspapers "featured articles full of outright lies with glaring omissions, all straight from the MPD reports in [his] cases."

Carey now brings this Section 1983 action against the MPD, Olson, Bartlett and Boufford in which he alleges claims of malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution and claims of defamation, tortious interference with contractual relations and intentional interference with prospective contractual relations under New Hampshire law.

<u>Discussion</u>

I.   <u>Section 1983 Claims</u>

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal law.  <u>See</u> 42 U.S.C. § 1983; <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981);

Rodriguez-Cirilo v. Garcia, 115 F.3d 50, 52 (1st Cir. 1997).  In order to be held liable for a violation under Section 1983, a defendant's conduct must have been a cause in fact of the alleged constitutional deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  The premise of Carey's Section 1983 action is that Olson, Bartlett and Boufford subjected him to malicious prosecution in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

A. Malicious Prosecution

To the extent Carey alleges a Fourteenth Amendment malicious prosecution claim, Section 1983 is not a proper vehicle by which to vindicate due process rights, whether procedural or substantive.  See Meehan v. Town of Plymouth, 167 F.3d 85, 88 (1st. Cir. 1999)("[a] § 1983 malicious prosecution claim is not properly based on either a procedural or substantive due process violation.")).  The availability of a state law remedy defeats any procedural due process claim for malicious prosecution.  See Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256 (1st Cir. 1996) ("a garden-variety claim of malicious prosecution garbed in the regalia of § 1983 must fail.").  Because New Hampshire provides an adequate remedy for the common law tort of

8

malicious prosecution, see Martin v. Applied Cellular Tech., 284 F.3d 1, 7 (1st Cir. 2002)(citing ERG, Inc. v. Barnes, 137 N.H. 186, 190, 624 A.2d 555 (1993)), Carey's procedural due process claims are barred under Section 1983. Accordingly, I recommend that the Fourteenth Amendment claims against Olson, Bartlett and Boufford be dismissed in their entirety.

For purposes of preliminary review, I will assume that Carey also seeks to vindicate his Fourth Amendment rights. To ultimately prevail, he must demonstrate that "criminal proceedings were initiated against him without probable cause and for an improper purpose and were terminated in his favor." See McCarthy v. Town of Milford, No. Civ. 02-372-M, 2004 WL 307090, at *6 (D.N.H. Feb. 18, 2004)(quoting Landrigan v. Warwick, 628 F.2d 736, 745 n.6 (1st Cir. 1980)). See also Meehan, 167 F.3d at 89 ("Thus, a § 1983 malicious prosecution action based upon a deprivation of Fourth Amendment rights requires a showing of the absence of probable cause to initiate proceedings."). To the extent Carey alleges that criminal proceedings were initiated against him for improper purposes and without probable cause, I conclude that he has alleged sufficient predicate facts to withstand preliminary review with regard to the two proceedings in which he was acquitted. Accordingly, I conclude that he has

alleged sufficient facts to assert Fourth Amendment claims

against Olson and Boufford.  As to the malicious prosecution

claim against Bartlett, Carey concedes that the charges against

him resulted in conviction.  I therefore conclude that he has

failed to allege a cognizable Fourth Amendment claim and

recommend that this claim be dismissed.

II.  <u>Municipal Liability</u>

Construed liberally, the complaint names the MPD as a

defendant in this action.  Municipalities and local government

entities are "persons" within the meaning of Section 1983.  <u>See</u>

<u>Monell</u>, 436 U.S. at 690.  A municipal entity cannot be held

liable under Section 1983 on a theory of *respondeat superior* or

vicarious liability; rather the municipality itself must

proximately cause the constitutional injury, through promulgation

or tacit approval of a policy or custom.  <u>See</u> <u>City of Canton v.</u>

<u>Harris</u>, 489 U.S. 378, 385 (1989).  To state a viable Section 1983

claim, a plaintiff must allege in substance that the challenged

municipal custom or policy was the "moving force" behind the

constitutional violations.  <u>See</u> <u>Board of the County Comm'rs v.</u>

<u>Brown</u>, 520 U.S. 397, 404 (1997); <u>McCabe v. Life-Line Ambulance</u>

<u>Serv.</u>, 77 F.3d 540, 544 (1st Cir. 1996) (citations omitted).

10

If Carey intends to pursue claims against the MPD he must, at a minimum, allege that his constitutional deprivations were the product of a municipal custom or policy.  Even liberally construing the complaint, I cannot reasonably conclude that the wrongful conduct ascribed to the defendants was the product of any unconstitutional municipal custom or policy.  Instead, the complaint plainly alleges that the wrongful conduct to which Carey was subjected resulted from the actions taken by individual defendants and not as the result of a policy statement, ordinance, regulation or officially adopted decision.  <u>See</u> <u>Monell</u>, 436 U.S. at 690.  Nothing in the complaint demonstrates how the MPD was the "moving force" behind the actions or omissions the defendants.  Accordingly, I conclude that the complaint fails to state a viable claim premised upon municipal liability and, therefore, recommend dismissal of the federal claims against the MPD.

Construed liberally, the complaint names Olson and Boufford in their official capacities as employees of the MPD.  Official capacity suits against officers of an agency are simply "another way of pleading an action against an entity of which an officer is an agent."  <u>Monell</u>, 436 U.S. at 690 n.55.  <u>See</u> <u>also</u> <u>Brandon v. Holt</u>, 469 U.S. 464, 471 (1985)(suits against parties in their

11

official capacities treated as suits against the municipality).

Because I find no municipal liability as to the MPD, I extend

that reasoning to Olson and Boufford and conclude that any

official capacity claims against them must fail.

III. <u>State Law Claims</u>

Carey asserts claims under New Hampshire law premised upon

defamation, tortious interference with contractual relations and

intentional interference with prospective contractual relations.

A.   <u>Defamation</u>

To establish defamation under New Hampshire law, a plaintiff

must show that the defendant failed to exercise reasonable care

in publishing, without a valid privilege, a false and defamatory

statement of fact about the plaintiff to a third party.  <u>See</u> <u>Moss</u>

<u>v. Camp Pemigewassett, Inc.</u>, 312 F.3d 503, 507 (1st Cir. 2002);

<u>accord</u> <u>Caouette v. OfficeMax, Inc.</u>, 352 F. Supp. 2d 134, 143

(D.N.H. 2005).  Here, Carey broadly alleges that "the Manchester

Union Leader, Nashua Telegraph, and Concord Monitor have all

featured articles full of outright lies with glaring omissions,

all straight from the MPD reports from [his] cases."  He does not

allege that the particular defendants in this action caused any

false or defamatory statements to be published.  Nor does he

identify the content of the alleged defamatory statements.

Because the complaint is lacking in sufficient predicate facts to support a defamation claim against any of the named defendants, I recommend dismissal of such claim in its entirety.

B.   <u>Interference with Contractual Relations</u>

This court has discussed the essential elements of both a claim for tortious interference with contractual relations and intentional interference with prospective contractual relations:

> To prove a tortious interference with contractual relations claim under New Hampshire law, [plaintiff] must prove that: (1) it had a contractual relationship with [a third party]; (2) [defendant] knew of the contractual relationship; (3) [defendant wrongfully induced [the third party] to breach the contract; and (4) [plaintiff's] damages were proximately caused by [defendant's] interference.  <u>Roberts v. General Motors Corp.</u>, 138 N.H. 532, 539, 643 A.2d 956 (1994); <u>National Employment Serv. Corp.</u>, 145 N.H. 158, 162, 761 A.2d 401 (2000).  "'Only improper interference is deemed tortious in New Hampshire.'"  <u>Id.</u> (quoting <u>Roberts</u>, 138 N.H. at 540.

<u>Alternative Sys. Concepts v. Synopsys, Inc.</u>, 229 F. Supp. 2d 70, 73-74 (D.N.H. 2002).

Here, Carey alleges that in February 2002, Boufford and Bartlett surrounded his place of employment at Energy To Go and arrested him, thereby causing him to lose his position as assistant manager.  Without providing any supporting facts, he further alleges that he lost a part-time position teaching oil

13

painting at Timberline High School.  Assuming that Carey had a
contractual relationship with the above employers, he has not
adequately alleged that defendants improperly interfered with
those relationships.  He alleges no contact whatsoever between
the defendants and the employers.  Even liberally construing the
complaint, I cannot discern any conduct on the part of the
defendants that constitutes improper interference with an
employment relationship.  Accordingly, I concluded that Carey has
failed to allege sufficient facts for a claim of intentional
interference with contractual relations and recommend dismissal
of this claim in its entirety.

Carey also alleges that defendants interfered with his
prospective contractual relations by interfering with an
anticipated employment offer.  "The elements of this tort are
described as follows: "One who, without a privilege to do so,
induces or otherwise purposely causes a third person not to . . .
enter into or continue a business relation with another is liable
to the other for the harm caused thereby."  Id.  When the claim
is for intentional interference with prospective contractual
relations, "the court has limited actionable claims to those
situations in which the plaintiff seeks relief for the
defendants' interference with already existing relationship that

14

gives rise to a reasonable expectation of economic advantage."
<u>Heritage Home Health, Inc. v. Capital Region Health Care Corp.</u>,
No. 95-558-JD, slip op. at 10-11, 1996 WL 655793 (D.N.H. Oct. 1,
1996)(quotation marks omitted).

In February 2002, Carey successfully interviewed for a
position at the Easter Seal Jolicoeur Center and was expecting to
receive an offer of employment.  He broadly alleges that Bartlett
and Boufford interfered with his anticipated offer of employment.
He further alleges that while was out on bail, he was hired as a
temporary employee by Unicast and was expecting to become a
permanent employee.  When a uniformed MPD police officer appeared
at Unicast and served Carey with a stalking petition, he
allegedly lost his prospective employment opportunity with
Unicast.

While Carey has alleged harm in being denied prospective
employment, he has not adequately alleged that defendants induced
or otherwise purposely caused the employers not to enter into or
continue a business relation with him.  Nor is there any
indication that any of the named defendants had contact with the
above employers.  Accordingly, I concluded that Carey has failed
to allege sufficient facts for a claim of intentional
interference with prospective contractual relations and recommend

15

dismissal of this claim in its entirety.

### Conclusion

For the reasons stated above, I find that Carey has alleged Fourth Amendment malicious prosecution claims against Olson and Boufford in their individual capacities.  I recommend dismissal of all remaining claims.

If this recommendation is approved, the claims as identified in this report and recommendation, will be considered for all purposes to be the claims raised in the complaint.  If the plaintiff disagrees with the identification of the claims herein, plaintiff must do so by filing an objection within ten (10) days of receipt of this report and recommendation, or by properly moving to amend the complaint.

Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the district court's order.  See 28 U.S.C. § 636(b)(1); Unauthorized Practice of Law Committee v. Gordon, 979 F.2d 11, 13–14 (1st Cir. 1992); United States v. Valencia–Copete, 792 F.2d

4, 6 (1st Cir. 1986).

James R. Muirhead
United States Magistrate Judge

Date: January 17, 2006

   cc: William J. Carey, *pro se*