UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


William J. Carey

v.                                    Civil No. 05-cv-293-JD

Steven Olson and Michael Boufford


O R D E R


William J. Carey, proceeding pro se, alleges claims of
malicious prosecution in violation of the Fourth Amendment, under
42 U.S.C. § 1983, against Manchester Police Detective Steven
Olson, Detective Peter Bartlett, and Officer Michael Boufford.[1]
Carey's claims arise from his arrest and prosecution on charges
of stalking and attempting to violate a stalking order.  Olson
and Boufford move for judgment on the pleadings.  Because
Bartlett was not a defendant when Olson and Boufford filed their
motion for judgment on the pleadings, that motion is considered
only as to Olson and Boufford.

---

[1]Following preliminary review under 28 U.S.C. § 1915A, the
magistrate judge reported that Carey alleged sufficient facts
only as to the Fourth Amendment malicious prosecution claims
against Olson and Boufford and recommended that only those
defendants be served with those claims.  The court approved the
report and recommendation.  Subsequently, however, the court
concluded that Carey also stated a Fourth Amendment malicious
prosecution claim against Detective Peter Bartlett and ordered
that he also be served.

Standard of Review

The standard for evaluating a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6). Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005). Under that standard, the court accepts all of the plaintiff's properly pleaded factual allegations as true and draws all reasonable inferences in his favor. Id. "The motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id. (internal quotation marks omitted).

With their motion for judgment on the pleadings, Olson and Boufford filed a copy of an order in a related case in this court; copies of filings and orders issued in the New Hampshire criminal cases brought against Carey, case number 02-S-1213 and case number 03-S-1078. Carey titled his response to the defendants' motion "Objection to Defendants' Motion for Summary Judgment" and appended copies of exhibits that he filed with his complaint. "[C]ourts may consider not only the complaint but also matters fairly incorporated within it and matters susceptible to judicial notice without converting the motion to dismiss into a motion for summary judgment." Greene v. Rhode Island, 398 F.3d 45, 48 (1st Cir. 2005). The court will consider the exhibits submitted by Carey and by the defendants without converting the motion to one for summary judgment.

2

<u>Background</u>

The events leading to Carey's claims against Detective Olson and Officer Boufford have not been presented in a clear chronological context in the complaint or in the defendants' motion for judgment on the pleadings.  It appears that Kristi Eglody was acquainted with Carey when she lived in New Hampshire in the early 1990s and that she now lives in North Carolina.  In 2002, Eglody sought and obtained a protective order against Carey in Manchester District Court based on her complaint that Carey was stalking her.  <u>Eglody v. Carey</u>, 02-cv-220 (April 29, 2002). That protective order has been extended several times.

Carey has been prosecuted twice on state charges of stalking and once for attempting to violate the protective order Eglody obtained against him.  He was charged with stalking in the first criminal case, case number 02-S-1213.  That trial ended in a mistrial, due a deadlocked jury, in July of 2002, and those charges were subsequently dropped.  Carey was arrested and charged in March of 2003 with attempting to violate the protective order, case number 03-S-1078.  He was found not guilty on October 16, 2003.  Sometime thereafter, Carey was again charged with stalking, and it appears that he was convicted on that charge in case number 04-S-2561.  Therefore, his claims of malicious prosecution pertain to the first two criminal cases, docket numbers 02-S-1213 and 03-S-1078.

Discussion

Carey alleges a Fourth Amendment claim of malicious prosecution against Detective Olson based on events beginning in 2003.  Carey alleges a Fourth Amendment claim of malicious prosecution against Officer Boufford based on his actions from 2002 to 2004.  Olson and Boufford move for judgment on the pleadings in their favor, asserting that no Fourth Amendment violation occurred.

The court notes that the First Circuit has not decided whether a claim of malicious prosecution violates the Fourth Amendment.  See, e.g., Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001); Bloomquist v. Albee, --- F. Supp. 2d ---, 2006 WL 618586, at *17 (D. Me. Mar. 9, 2006); Cabrera-Negron v. Municipality of Bayamon, --- F. Supp. 2d ---, 2006 WL 401667, at *4 (Feb. 13, 2006).  For that reason, other courts in this circuit have concluded that officers are entitled to qualified immunity as to § 1983 claims of Fourth Amendment malicious prosecution.  Bloomquist, 2006 WL 618586, at *17; Sheppard v. Aloisi, 384 F. Supp. 2d 478, 491 (D. Mass. 2005); Hernandez-Lopez v. Pereira, 380 F. Supp. 2d 30, 33 (D. P.R. 2005).  The defendants here, however, have not raised qualified immunity.

To the extent such a claim is recognized at all, malicious prosecution in violation of the Fourth Amendment occurs when the defendants effect an unreasonable seizure of the plaintiff

4

"pursuant to legal process." <u>Nieves</u>, 241 F.3d at 53.  "In order
to state a cause of action for malicious prosecution, a plaintiff
must allege that criminal proceedings were initiated against him
without probable cause and for an improper purpose and were
terminated in his favor."  <u>Meehan v. Town of Plymouth</u>,
167 F.3d 85, 88-89 (1st Cir. 1999).  If the plaintiff was
arrested based upon a warrant, the arrest warrant constitutes the
legal process that initiated the prosecution.  <u>Nieves</u>, 241 F.3d
at 53.  An arrest pursuant to a warrant that is supported by
probable cause does not violate the Fourth Amendment.  <u>Meehan</u>,
167 F.3d 89.

"In short, the ultimate question for determining whether an
arrest violates the Fourth Amendment is, in this context as in
any other, whether there was probable cause to believe that the
arrestee had committed or was committing a crime."  <u>Wilson v.
City of Boston</u>, 421 F.3d 45, 55 (1st Cir. 2005).  Probable cause
is "the conclusion that a crime had been committed (or was about
to be committed) and that [the arrestee] likely was one of the
perpetrators."  <u>Id.</u> (internal quotation marks omitted).  "In sum,
the existence of probable cause . . . is gauged by an objective
standard; as long as the circumstances surrounding the event
warrant the officer's reasonable belief that the action taken is
appropriate, the arrest is justified."  <u>Logue v. Dore</u>, 103 F.3d
1040, 1044 (1st Cir. 1997).

A.  <u>The First Criminal Prosecution, Case Number 02-S-1213</u>

Carey alleges that Olson's involvement with his case began in 2003, with events that led to his prosecution in case number 03-S-1078.  Therefore, Carey makes no claim against Olson based on the first prosecution, case number 02-S-1213, which began in early 2002.

With respect to Boufford, Carey alleges that Kristi Eglody called the Manchester Police Department from North Carolina, where she lived, and spoke to Boufford, apparently about packages she had received from Carey in December of 2001.  He alleges that Boufford received a letter from Eglody in January of 2002 in which she claimed to know nothing about Carey except his address but asked Boufford to harass Carey.  He alleges that in February of 2002, Officer Bartlett along with other police officers, detectives, and domestic violence advocates met Carey when he returned to his apartment.  Barlett informed Carey that they were there because Carey was stalking Eglody, and Carey responded that he had sent her two bottles of perfume for her birthday and for Christmas.  He says that Bartlett yelled at him and threatened him with arrest and that his apartment was searched.

Carey further alleges that he went to the Manchester Police Station with the police, although he was not under arrest. Carey gave a statement to Bartlett and Boufford.  He contends that Boufford chose to disregard Carey's side of the story and to believe Eglody, despite contradictions in what she had told him.

He also alleges that Boufford and Bartlett arrested him in
February of 2002 at his place of employment, but he provides no
pertinent detail pertaining to that arrest.

Carey states that Boufford testified against him "at the
Manchester District Court trial in June of 2002."  He says
Boufford testified that Eglody had telephoned him in 1993 and
complained about Carey but that there was no police report of
that complaint.  Carey alleges that the Manchester Police
Department later fabricated a police report by Officer Czarnec
about complaints by Eglody against him in 1993, which report is
included in the record.

To show that probable cause existed to arrest Carey on the
charges that were prosecuted in case number 02-S-1213, the
defendants primarily rely on a decision issued in another case in
this court, Carey v. Eglody, Civil No. 05-cv-010-SM.  In that
case, Carey brought suit against Kristi Eglody, alleging claims
of defamation, tortious interference with contractual relations,
and malicious prosecution.  The court granted in part and denied
in part Eglody's motion for summary judgment.  Id., Op. No. 2006
DNH 032, Mar. 17, 2006.

The defendants assume, without explanation, that the
decision in Carey v. Eglody, id., is binding for purposes of
their motion for judgment on the pleadings in this case.  In the
absence of any reasoned analysis to support the defendants'
reliance on that decision, it cannot be considered here to

7

establish the issue of probable cause.  <u>See</u>, <u>e.g.</u>, <u>Harlow v.
Children's Hosp.</u>, 432 F.3d 50, 55 (1st Cir. 2005) (explaining
"law of the case" doctrine); <u>Gonzalez-Pina v. Rodriguez</u>, 407 F.3d
425, 430 (1st Cir. 2005) (explaining collateral estoppel);
<u>Monarch Life Ins. Co. v. Ropes & Gray</u>, 65 F.3d 973, 978 (1st Cir.
1995) (same).

     Alternatively, the defendants contend that probable cause
was established during the trial of case number 02-S-1213.  They
rely on the first page of Carey's motion for reconsideration of
the denial of his motion to dismiss the charge and the notice of
decision denying Carey's motion.  The defendants argue that
because the state court found there was adequate evidence to
submit the stalking charge to the jury, that conclusion "should
be preclusive on the issue of probable cause."  Def. Mem. at 8.
The court does not follow the defendants' reasoning.

     To be entitled to judgment on the pleadings, the defendants
must show that Carey failed to "allege that criminal proceedings
were initiated against him without probable cause and for an
improper purpose and were terminated in his favor."  <u>Meehan</u>,
167 F.3d at 88-89.  "Generally, the offending legal process comes
either in the form of an arrest warrant (in which case the arrest
would constitute the seizure) or a subsequent charging document
(in which case the sum of post-arraignment deprivations would
comprise the seizure)."  <u>Nieves</u>, 241 F.3d at 54.  Whether or not
there was sufficient evidence at the criminal trial to allow the

8

case to go to the jury does not address the issue of probable cause for the legal process that initiated the prosecution.

Although Carey's allegations might be interpreted to suggest probable cause to arrest him in February of 2002, under the standard for judgment on the pleadings, those allegations must be taken in the light most favorable to him.  Therefore, the defendants have not shown that Carey failed to allege a Fourth Amendment malicious prosecution claim based on case number 02-S-1213.


B.  The Second Criminal Prosecution, 03-S-1078

Carey alleges that Olson's involvement in the circumstances that led to the second criminal prosecution, case number 03-S-1078, constitutes malicious prosecution.  The arrest warrant in that case was issued on March 3, 2003, by Justice William H. Lyons, based on the affidavit sworn by Manchester Police Officer Martin F. Swirko on the same day.  The arrest warrant charges Carey with attempting to violate the protective order obtained against him by Eglody.

Under New Hampshire law, a person commits the offense of stalking if he "[p]urposely, knowingly, or recklessly engages in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety, . . . engages in a course of conduct targeted at a specific individual, which the actor knows will place that individual in

9

fear for his or her personal safety, . . . [or] engages in a
single act of conduct that both violates the provisions of [a
protective] order and is listed in paragraph II(a)" after being
served with or provided notice of the protective order.  RSA
633:3-a, I.  Paragraph II(a) lists prohibited conduct, including
"[t]hreatening the safety of the targeted person," "[f]ollowing,
approaching, or confronting that person," and "[p]lacing an
object on the person's property, either directly or through a
third person."  RSA 633:3-a, II.  "A person is guilty of an
attempt to commit a crime if, with a purpose that a crime be
committed, he does or omits to do anything which, under the
circumstances as he believes them to be, is an act or omission
constituting a substantial step toward the commission of the
crime."  RSA 629:1, I.

Officer Swirko submitted a four-page affidavit in support of
his application for an arrest warrant.  In the affidavit, Swirko
said that Carey's mother, Judith Macdonald, came into the
Manchester police station on February 28, 2003, while he was on
duty, and asked to speak to an officer.  Macdonald told Swirko
that she was afraid that Carey was planning to kill himself and
possibly another person, Kristi Eglody.  She said that Carey had
been arrested and charged with stalking Eglody in 2002.

After investigating police department files, Swirko found
that Eglody met Carey in about 1992 while attending college in
New Hampshire.  Although Eglody and Carey were friendly at first,

Carey began to arrive uninvited at places where Eglody would be, call her continuously, and drive by her home.  Eglody moved to Hawaii where she continued to receive hang-up calls that she believed were from Carey.  After she moved to Charlotte, North Carolina, she received packages there sent by Carey.

Swirko further stated that Eglody sought and was granted a "Stalking Protective Order" against Carey, issued by the Manchester District Court, with a final order in effect since April 29, 2002.  Eglody reported to the Manchester police in February of 2002 that Carey had been sending her gifts and letters, using a return address of "Bill and Kristi Carey" at her former address in Manchester and making hang-up calls to her home.  Carey had admitted that he had sent gifts and called Eglody.

Swirko also stated that Carey had another stalking order entered against him because he was leaving notes and gifts on another victim's car in 2001.  He was charged with violating a protective order, stalking, and harassing that victim, and he was found guilty of stalking.  Although he appealed that decision, his mother told Swirko that he would plead guilty to that charge.

Macdonald also told Swirko that she found lyrics that Carey had written about dying and that he had talked about not caring about his life.  Because of her concerns for him, Macdonald searched a box in Carey's room and found an advertisement and admission for a gun show in Seabrook for March 2 and 3, 2003, and

11

a Greyhound Bus Ticket to Charlotte, North Carolina, issued in Manchester to "Armand Useforce," useable until April 7, 2003. She also found Mapquest directions from the Greyhound Bus Terminal in Charlotte to Kristi Eglody's home in Charlotte. Macdonald told Swirko that she believed her son was going to buy a gun, travel to Charlotte, and kill himself and possibly Eglody.

The information provided by Officer Swirko in his affidavit provided an ample basis for probable cause to arrest Carey for an attempt to violate the protective order that had been entered against him.  Although Carey alleges that Olson "secured [Carey's] mother's cooperation to 'set [him] up' and 'throw [him] in jail,'" that conclusory allegation does not undermine Judith Macdonald's account to Officer Swirko about her concerns as to Carey's plans with respect to Eglody.  Therefore, Detective Olson is entitled to judgment on the pleadings as to Carey's malicious prosecution claim against him.  Officer Boufford is entitled to judgment on the pleadings on Carey's malicious prosecution claim against him to the extent it is based on Boufford's role in prosecuting criminal case number 03-S-1078.

<u>Conclusion</u>

For the foregoing reasons, the defendants' motion for judgment on the pleadings (document no. 16) is granted in part and denied.  The claim against Detective Olson is dismissed, leaving no claims against him in this case.  That part of the claim against Officer Boufford that is based on case number 03-S-1078 is also dismissed.

The issues raised in the defendants' motion would be more appropriately addressed in a properly supported motion for summary judgment.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

April 21, 2006

cc:  William J. Carey, pro se
     Robert J. Meagher, Esquire